IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

D.J. SIMMONS, INC.,

        Petitioner,

vs.                                                          No. CIV  99-1105 JP/LFG

F. BRIAN BROADDUS and
B/R ENERGY PARTNERS, INC.,

        Respondent.

## MAGISTRATE JUDGE'S RECOMMENDED DISPOSITION ON PLAINTIFF'S MOTION FOR SANCTIONS AND CONTEMPT AGAINST F. BRIAN BROADDUS

THIS MATTER comes before the Court on D.J. Simmons, Inc.'s ("Simmons") Motion for Sanctions and Contempt Against F. Brian Broaddus ("Broaddus") [Doc. 72].

A Magistrate Judge may impose a variety of sanctions under F.R.Civ.P. 16 and 37 for violations of court orders and directives and for failing to comply with discovery obligations. Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1519-20 (10th Cir. 1995).  Here, however, Simmons requests that Broaddus be held in contempt.  A magistrate judge's contempt authority is restricted, and the judge may either certify facts for contempt under 28 U.S.C. § 636(e) or issue a § 636(b)(1)(B) report and recommendation to the trial judge.  Because of the sanctions proposed, this matter is submitted as a recommendation.[1]  The Court, having considered the submissions of the parties, recommends that the motion should be granted in part and denied in part.

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1) and F. R. Civ. P. 72, file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.

The Court finds that Broaddus has failed to fulfill his discovery obligations and that, as a sanction for this failure, he should be deemed subject to the *in personam* jurisdiction of the Court. Because this sanction would necessarily resolve Broaddus' pending Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 28], this matter is submitted as a Recommended Disposition under 28 U.S.C. § 636(b)(1)(B) and (C) and F. R. Civ. P. 72(b).   Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1462 (10th Cir. 1988); Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1519-20 (10th Cir. 1995).

## Background of the Discovery Dispute

Simmons brought suit in New Mexico state court against Broaddus and B/R Energy Partners, Inc. ("B/REP"), in a dispute involving the proper accounting and payment allegedly due Simmons under gas purchase and sales agreements for liquid gas products.  Simmons is a gas producer whose principal place of business is Farmington, New Mexico.  B/REP was a Texas corporation, now dissolved, which purchased gas from Simmons.  Broaddus, an Oklahoma resident, was the president, sole director, and sole shareholder of B/REP.  B/REP and Broaddus are represented by the same counsel.  On September 29, 1999, Defendants removed the case to this Court on the basis of diversity jurisdiction.

A.  Written Discovery Requests

Prior to removal, Simmons served discovery requests on both defendants; these discovery requests were deemed served in the federal action, and responses were due sometime in December 1999 (the parties dispute the exact date, and the record is unclear).  Whatever the original date, Simmons agreed in early December to allow Defendants an extension of time until January 17, 2000

for service of responses.[2]

On December 10, 1999, Broaddus filed a Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 28]. Broaddus did not move for a protective order or otherwise seek to stay discovery pending resolution of his motion to dismiss. On the last day of the agreed response period, Defendants' counsel faxed to Simmons' counsel a response to some of the discovery requests and mailed responses to all of the requests on the following day. Discovery directed to Broaddus included Requests for Admission, Interrogatories, and Requests for Production. In his responses, Broaddus asserted a general objection to each of these requests, as follows:

> Defendant Broaddus objects to each of Plaintiff's Requests for Admissions [and Interrogatories and document requests] on the grounds that he is not amenable to the jurisdiction of the Court. Pending before the Court is Broaddus' motion to dismiss for lack of personal jurisdiction which Broaddus believes will result in his dismissal from the above-captioned action. Accordingly, Plaintiff's requests ... to Broaddus are premature and Broaddus is not required to answer pending resolution of his motion.

(Exhibits B, D, J to Plaintiff's Memorandum Brief in Support of Motion to Compel [Doc. 45]).

On February 4, 2000, Simmons served a Motion to Compel answers to the discovery requests, directed to both defendants. With respect to Broaddus, Simmons argued that his blanket refusal to provide discovery, based on pendency of a motion to dismiss, was improper. The undersigned Magistrate Judge agreed, and on March 7, 2000 ordered Broaddus to respond to the discovery requests within ten days. This order was later withdrawn and, in conformance with an earlier order filed by District Judge James A Parker, the Magistrate Judge entered a new order, staying all discovery except that pertaining to personal jurisdiction over Defendant Broaddus. The new order

---

[2]Such agreements between parties are not discouraged by the Court, as long as they do not interfere with the ultimate deadline for completion of discovery or other case management deadlines.

set a March 31 deadline for submitting responses to the earlier discovery requests.  [Docs. 60, 63].
Judge Parker's order [Doc. 42] gave Simmons until April 17, 2000 to complete the limited discovery
on jurisdictional issues and to file a supplemental response to Broaddus' motion to dismiss.

        Correspondence between the parties during the limited jurisdictional discovery period
demonstrates that they held differing views on the meaning of the "jurisdictional issues" involved in
this case and consequently on the relevance of certain discovery requests.  On March 3, Broaddus'
counsel faxed a letter to Simmons' counsel, asking him to "please identify in writing the specific
Request for Admissions, Interrogatories, and Requests for Production of Documents which Simmons
believes are related to the issue of personal jurisdiction," adding that "[n]aturally, any disagreements
over the relation between the identified discovery requests and the issue of personal jurisdiction will
be addressed in defendant F. Brian Broaddus' written responses."  (Doc. 76, Exhibit B).  Dick
Gerding, co-counsel for Simmons,  responded by letter dated March 6, 2000, listing by number
specific Requests for Admissions, Requests for Production, and Interrogatories which, in Simmons'
view, were directed to the personal jurisdiction question.  (Doc. 76, Exhibit C).

        With the March 31 deadline for response looming, Broaddus' counsel waited until March 22
to review the Gerding letter.  At that date, he apparently realized for the first time that, as he puts it
in his opposition memorandum, "Obviously the parties had wildly differing interpretations of the
meaning of discovery 'reasonably calculated to lead to evidence on the issue of personal jurisdiction
. . ..'"  (Doc. 76, at 7-8).  He states that, "in an effort to resolve anticipated problems," he invited
Simmons' counsel to discuss the matter in a conference call.   This conversation took place two or
three days prior to the deadline for Broaddus to respond to the written discovery requests.

        On March 29, following the phone conversation, Broaddus' counsel wrote to Simmons'

4

counsel, noting the parties' disagreement over the scope of discovery, both as to the written discovery requests and as to the matters to be explored at the upcoming deposition of Mr. Broaddus.  He expressed his position that "[v]irtually all of the written discovery . . . exceeds those boundaries and goes to the merits of the case rather than the issue of personal jurisdiction."   (Doc. 74, Ex. A).

Attorney Gerding sent a letter in response, setting forth Simmons' position that Broaddus had a duty to provide information relating to personal jurisdiction, even if that information might also apply to issues going to the merits.  Attorney Honea also responded, detailing in his letter  Simmons' reasons for asserting personal jurisdiction[3] and setting forth Simmons' position regarding relevance of the information and items sought (Doc. 74, Exs. B, C).

On March 31, the date set for service of responses to the written discovery requests, Broaddus' counsel faxed to Simmons' counsel his supplemental responses to the discovery requests.[4] In these responses, Broaddus refused to answer numerous requests on grounds they dealt with matters beyond the scope of the personal jurisdiction issue.

B.  The Broaddus Deposition

In his order of February 24 allowing Simmons to pursue limited discovery, Judge Parker specifically permitted Simmons to take the deposition of Defendant Broaddus for purposes of eliciting information going to issues of personal jurisdiction.  Within  a few days of this order, the parties discussed setting a date and time for Broaddus' deposition.  Simmons' counsel alleges that Broaddus

---

[3] Those bases being: (1) Broaddus was the alter ego of a corporate entity doing business in New Mexico; (2) Broaddus committed the tort of fraud in connection with business to be done in New Mexico; and (3) Broaddus personally transacted business in New Mexico after dissolution of B/R Energy Partners, Inc.

[4]Simmons' counsel contends that he began receiving the faxed responses after working hours. (Doc. 73, at 9).

said he would not be available until April 5, and Simmons agreed to that date in order to avoid having to apply to the Court for relief and delaying the deposition any further.

As noted above, counsel for the parties participated in a conference call on March 27 or 28, in an attempt to resolve their differences with regard to the meaning of jurisdictional discovery.  In this call, counsel touched on issues arising from the written discovery requests, as well as issues related to questions to be asked at the upcoming Broaddus deposition and documents to be produced pursuant to the subpoena duces tecum issued in connection with the deposition.  The parties were unable to resolve their disputes.

It was clear after this call, and the follow-up correspondence from Simmons' attorneys, that Simmons would expect Broaddus to respond to a variety of deposition questions and produce documents bearing on the issues of alter ego, fraud, and transaction of business in New Mexico, all items relevant to Simmons' jurisdictional claims over Broaddus.  Broaddus did not want to disclose the information, taking the position that the information sought was not relevant to the issue of personal jurisdiction.

Given the parties' differing definitions of the jurisdictional issues and divergent interpretation of what was relevant to those issues, the prudent course for Broaddus, for whom a deposition was looming, would have been to contact the Court.  Even during the course of Broaddus' deposition, Broaddus could have applied for a protective order in connection with the deposition.  This would have allowed the Court to resolve the relevance question hanging over the deposition since, unfortunately, the parties were incapable of agreeing between themselves on the proper scope of questioning.  Instead of seeking an order of the Court, Broaddus simply refused, repeatedly, to

answer questions propounded at the deposition.[5]

Broaddus' counsel objected numerous times and instructed Broaddus not to answer deposition questions on such topics as whether Broaddus continued to transact business in New Mexico following the dissolution of B/REP, whether any of the assets of B/REP went to Broaddus upon dissolution of the company or to any Broaddus alter-ego, the identity of persons or entities responsible for administering ongoing gas contracts in New Mexico after dissolution of B/REP, whether Broaddus made false statements in B/REP's articles of dissolution, whether Broaddus made promises to Simmons in the course of contract negotiations which he did not intend to keep, and other matters which this Court finds relevant to the question of personal jurisdiction, as discussed below. Even after the deposition, Broaddus made no attempt to seek a post-deposition protective order or otherwise bring the dispute before the Court.

### Discussion

A. <u>Plaintiff's Theories of Personal Jurisdiction</u>

Simmons' motion for sanctions is based on its argument that Broaddus had no valid basis for objecting to the discovery requests and deposition questions as being outside the scope of the Court's orders, since all such requests were designed to elicit information directly relevant to Simmons' theories of personal jurisdiction, including alter ego, fraud, and personal transaction of business on a systematic and continuous basis in New Mexico. Simmons argues that Broaddus' refusal to respond to discovery was motivated not by a legitimate disagreement over the relevance of Plaintiff's requests, but rather was designed impermissibly to withhold information which Simmons needed in

---

[5]Simmons also asserts that the documents supplied by Broaddus in response to the subpoena duces tecum were heavily redacted and incomplete; Broaddus counters that the items produced were substantially complete and responsive to the subpoena.

order to respond to Broaddus' motion to dismiss; the Court agrees.

Simmons' jurisdictional theories are as follows:  (1) Broaddus was the alter ego of B/REP, which unquestionably had minimum contacts in New Mexico; (2) Broaddus subjected himself to the general jurisdiction of New Mexico laws by engaging in continuous and systematic conduct of business in New Mexico after the dissolution of B/REP either on his own or through another alter ego corporation; and (3) Broaddus subjected himself to the jurisdiction of New Mexico laws through his personal commission of fraudulent acts perpetrated on the Plaintiff corporation, whose principal place of business is New Mexico.  (*See,* Doc. 73, at 4; (Doc. 66, at 2-6).

This Court tests personal jurisdiction over a non-resident defendant by reference to the New Mexico Long-Arm Statute, N.M.S.A. (1978) § 38-1-16, to the extent consistent with constitutional due process requirements.  Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1532 (10th Cir. 1996);  Martin v. First Interstate Bank of Calif., 914 F. Supp. 473, 475 (D.N.M. 1995). The three bases put forth by Simmons are valid grounds for asserting long-arm jurisdiction over Broaddus under New Mexico and Tenth Circuit law; indeed, Broaddus does not dispute the validity of these grounds.  *See generally,* Memorandum of Points and Authorities in Reply to Plaintiff's Response to Defendant's Motion to Dismiss for Lack of Jurisdiction [Doc. 33], and Supplemental Memorandum [Doc. 70].

B.  Relevance of Simmons' Discovery Requests to the Asserted Jurisdictional Theories

Both in its written discovery requests, and in questions asked at the Broaddus deposition, Simmons sought information relevant to the theories of alter ego, fraud, and continuous, systematic conduct of business in the state. Broaddus had no valid basis for objecting to these requests, and his failure to respond has hampered the ability of Simmons to respond to the motion to dismiss and has

kept from the Court information relevant to its resolution of the motion.

   1. <u>Written Discovery</u>

  In its Motion for Sanctions, Simmons points to the following discovery requests to which Broaddus objected:

  Broaddus refused to answer Simmons's Interrogatories Nos. 5, 6, 8, and 13 on grounds they seek information outside the scope of the Court's orders.  [Doc. 76, App. F].  These interrogatories seek information on payments and distributions made by B/REP to Broaddus or to others for his personal benefit, from 1995 to the present; transfer of assets from B/REP to Broaddus from 1995 to present; and any indebtedness which B/REP paid from 1995 to present, for which Broaddus was personally liable.  The Court disagrees with Broaddus' statement that "discovery directed at the winding up and dissolution of the corporation, including the identification of assets and assignees or transferees of those assets, is not reasonably calculated to lead to evidence on the issue of personal jurisdiction over Broaddus" [Doc. 76, at 12].  The requested information all appears relevant to the issue of alter ego.

  Broaddus refused to respond, or produced incomplete responses, to Simmons' Requests for Production, Nos.1-4, 6-7, 9-10, and 42-43.  These requests seek certain corporate records of B/REP, including Articles of Incorporation, corporate minutes, and Articles of Dissolution; B/REP's various financial statements from 1995 to present; documents relating to distributions from B/REP to Broaddus or to others for his benefit; documentation concerning stock ownership in B/REP; the complete books and records of account of B/REP from 1995 to present; all documents evidencing the disposition of assets in winding up the affairs of B/REP; documentation related to contract and documents attached as exhibits to the original Complaint; all correspondence between B/REP and

Simmons from 1995 to present dealing directly with Mr. Broaddus; Broaddus' financial statements, including tax reports and loan applications, from 1995 to present, and documentation of all transactions between B/R/EP and Broaddus from 1995 to present.

Although some of these Requests for Production cast a wide net, they are nevertheless relevant to the issue of personal jurisdiction, as they go to issues of alter ego and conduct of business in the state.  Broaddus had a duty to answer requests for production of documents pertinent to whether he had exclusive control of B/REP to the extent that the corporation was the instrumentality of Broaddus for the transaction of business in New Mexico, and whether he continued to transact business in the state following the dissolution of B/REP.  The corporate and financial records sought by Simmons are relevant to these issues.  If Broaddus wished to narrow the scope of Simmons' requests, he should have requested a protective order.

2. <u>Deposition Questions</u>

Defense counsel objected to numerous questions asked at Broaddus' deposition on grounds they sought to elicit information irrelevant to issues of personal jurisdiction.  He objected and instructed his client not to answer questions on the following topics:

Broaddus' interest in certain companies which might be doing business in New Mexico and the scope and geographical operation of those companies; questions regarding documents in Broaddus' custody and control that are responsive to requests set out in the subpoena duces tecum; questions about the formation and source of capitalization of Phoenix Energy Consulting Services, Inc. ("Phoenix") and the relationship between Phoenix and B/REP, designed to elicit information as to whether Phoenix was the alter ego of Broaddus and whether it was the recipient of assets of B/REP after its dissolution; questions regarding the assets of B/REP at the time of its dissolution and

the distribution of those assets upon dissolution; questions about the identities of other companies from whom B/REP was buying gas in 1998 prior to its dissolution; questions dealing with Broaddus' actions with regard to ongoing gas contracts after the dissolution of B/REP; questions as to who administered certain contracts with specified companies after the dissolution of B/REP; questions relating to debts of B/REP at the time of dissolution and what arrangements had been made to discharge these obligations.  (Doc. 74, Ex. G).  Each of these questions is relevant to the questions of alter ego and continuing conduct of business in New Mexico.

Counsel also instructed Broaddus not to answer questions regarding Broaddus' knowledge of the falsity of statements he made in the articles of dissolution, questions regarding representations and promises made by Broaddus to Simmons in connection with negotiation of the gas contracts, and questions relating to Broaddus' understanding, during the process of negotiating gas contracts, of the effect that any breach of contract on the part B/REP would have in New Mexico.  (Doc. 74, Ex. G). These questions were relevant to the theory that Broaddus committed fraud in the state.

It is generally improper for an attorney to instruct a deponent not to answer a question.  there are only a few exceptions to this rule:  (1) to preserve a privilege; (2) to adhere to a prior order limiting discovery; (3) to terminate the deposition so as to seek immediate judicial relief.  American Hanger, Inc. v. Basic Line, Inc., 105 F.R.D. 173 (D. Mass. 1985); Int'l Union of Elec., Radio, and Machine Workers v. Westinghouse Elec. Corp., 92 F.R.D. 277 (D.D.C. 1981).

Discovery is to be taken subject to objection.  F.R.Civ.P. 30(c).  Thus, the appropriate procedure is to state an objection but have the witness answer the question, unless, of course, the question deals with any of the aforementioned exceptions.  Here, the instruction not to answer, when questions went to legitimate jurisdictional discovery, were improper.  The questions described above

11

were relevant to the issues of alter ego, continuing conduct of business in the state, or fraud.

The Court therefore disagrees with Broaddus' general statement that the 25 deposition questions listed in his Memorandum in Response to this motion for sanctions constitute "brazen attempts to explore issues unrelated to the Court's jurisdiction over Broaddus." [Doc. 76, at 16 n.11].

C.  Broaddus Abused the Discovery Process and is Subject to Sanctions

Simmons is entitled to discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending lawsuit . . . The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." F.R.Civ.P. Rule 26(b)(1). In the present posture of this case, the "subject matter" of discovery is whether Oklahoma resident Broaddus is subject to personal, long-arm jurisdiction in this lawsuit.

1.  Disobedience to Court Orders

Broaddus argues that he did not engage in sanctionable misconduct, because there is no outstanding court order directing him to respond to discovery requests. This is incorrect; there are three orders. Broaddus responded to Simmons' initial written discovery requests by waiting until the last day of the period for response, then refusing to answer on grounds that a motion to dismiss him from the lawsuit was pending. Pendency of a dispositive motion is not an appropriate ground for objection to discovery. *See,* Initial Pretrial Report [Doc. 26], at 6 ("the pendency of dispositive motions shall not stay discovery"); *see also*, In re Valence Technology Securities Litigation, No. C 94-1542-SC, 1994 WL 758688, at *2 (N.D. Cal. Nov. 18, 1994):

> The Federal Rules of Civil procedure do not provide for an automatic stay of discovery pending resolution of a motion to dismiss.  Further, courts have not looked favorably upon granting a blanket stay of discovery pending resolution of a challenge to the legal sufficiency of a plaintiff's complaint [*citing* <u>Landis v. North American Co.</u>, 299 U.S. 248, 255 (1936)] . . ..  The party seeking a stay of discovery faces a heavy burden of making a 'strong showing' why discovery should be denied.

Broaddus did not seek a protective order, and the Court granted Simmons' motion to compel responses to the interrogatories and requests for production.

In the meantime, in response to Broaddus' motion to dismiss, Simmons asked the Court to either deny the motion, or defer ruling on it while permitting Simmons to conduct limited discovery on issues related to minimum contacts and personal jurisdiction.  Judge Parker ruled that "Plaintiff's request to conduct limited discovery on the issue of the Court's personal jurisdiction over Defendant Broaddus should be granted" and that Simmons would be allowed to conduct further discovery on this issue and then to supplement its response to Broaddus' motion to dismiss for lack of personal jurisdiction.  [Doc. 42].  This order effectively imposed on Broaddus an obligation to respond fully to all written discovery requests and to answer completely all questions asked at his deposition, subject to any valid objections.  F.R.Civ.P. 30(d)(1), 33(b)(1), 34(b).

In the wake of Judge Parker's order, the Magistrate Judge vacated an earlier ruling on the motion to compel and entered orders staying all non-jurisdictional discovery, but "requir[ing] Broaddus to respond to Simmons' outstanding discovery requests which relate to issues concerning the conduct of business in New Mexico" [Doc. 60], later clarified to order that Plaintiff may pursue discovery which is "reasonably calculated to lead to evidence on the issue personal jurisdiction over Defendant Broaddus."  [Doc. 63].  Thus, Broaddus was under three court orders requiring him to

13

respond to discovery requests from Plaintiff that were reasonably calculated to lead to evidence that he was, or was not, subject to personal jurisdiction in this matter.  Broaddus did not meet his obligations in this regard.

Broaddus also argues that, by certain language in the first, now-withdrawn, order compelling discovery, the Court has precluded itself from imposing sanctions unless Plaintiff files a renewed motion to compel.  The Court rejects this argument.  While it is generally true that a party or his counsel must be in violation of a court order before sanctions can be imposed under Rule 37, In re Sanction of Baker, 744 F.2d 1438, 1440-41 (10th Cir. 1984), it is also true that a Court has the inherent power to impose sanctions in response to abusive litigation practices.  Roadway Express, Inc. v. Piper, 447 U.S. 752, 765,  100 S. Ct. 2455, 2463 (1980); D&H Marketers, Inc. v. Freedom Oil & Gas, Inc., 744 F.2d 1443, 1444 n.1 (10th Cir. 1984); Jones v. Thompson, 996 F.2d 261, 264 (10th Cir. 1993); Schmidt v. Ford Motor Co., 112 F.R.D. 216 (D. Colo. 1986).  Sanctions may even be imposed *sua sponte*.  Hollis v. United States, 744 F.2d 1430, 1433 (10th Cir. 1984).

In any case, the Court entered an order granting Plaintiff's motion to compel [Doc. 49], an order necessitated by Broaddus' unreasonable refusal to respond to discovery requests on grounds that a dispositive motion was pending.  This order was withdrawn, but it was substituted by a successor order [Doc. 60] and later clarification [Doc. 63] which required Broaddus to respond to all outstanding discovery requests as they relate to jurisdictional issues.  These orders were necessitated by Broaddus' failure to respond to discovery.  The Court is not required to specify "exactly what information [Broaddus] had to disclose" before it can award sanctions.  Fjelstad v. American Honda Motor Co., 762 F.2d 1334, 1340 (9th Cir. 1985).  Broaddus has been accorded due process in that he had ample opportunity to present his position on the matter of sanctions.  *See*,

14

G.J.B & Associates, Inc. v. Singleton, 913 F.2d 824,  830 (10th Cir. 1990) (re: Rule 16 sanctions).

The Court has no doubt of its authority to order sanctions upon violation of these orders.

      2.  Pattern of Evasion

Beyond Broaddus' violation of specific court orders, it is apparent that he has engaged in a

pattern of avoiding discovery obligations.  See, Devore & Sons, Inc. v. Aurora Pacific Cattle Co., 560

F. Supp. 236 (D. Kan. 1983), in which the District Court upheld the Magistrate Judge's imposition

of a dispositive sanction for "[t]he dilatory and uncooperative attitude held by the defendants toward

the plaintiff's interrogatories."  Broaddus has asked the Court to decide whether it has jurisdiction

over his person but has  resisted discovery which would aid the Court in making this determination.

Broaddus has not responded adequately to Simmons' written discovery requests.  His counsel

objected numerous time to valid deposition questions and instructed Broaddus not to answer.

Broaddus' counsel delayed two weeks, after receiving notice from Simmons identifying the specific

discovery requests which it considered relevant to the jurisdictional issue, before notifying Simmons'

counsel that it disagreed with their assessment of relevancy and would not provide the discovery

requested.  Simmons states that Broaddus claimed he would not be available for deposition until late

in the limited discovery period, and Broaddus does not dispute this; he thus had adequate time to seek

a protective order with regard to questions he knew would be asked at deposition, but he failed to

do so.  Instead, Broaddus simply refused to answer the questions, on instruction of counsel.

Broaddus failed to meet his discovery obligations, and his conduct is sanctionable.

Broaddus' failure to provide adequate responses to Simmons' written discovery requests in

violation of court orders, and his reliance on unjustified grounds for doing so, is sanctionable conduct.

When a party unreasonably thwarts discovery attempts, he places an unnecessary financial burden on

the opposing party and subjects litigants and the court to "slow-paced and obstacle-laden discovery,"

Ocelot Oil Corp., at 1460, which violates the spirit of the Rules and "impose[s] costs on an already

overburdened system and impede[s] the fundamental goals of the 'just, speedy, and inexpensive

determination of every action.'"   Committee Comment, 1983 Amendment to F. R. Civ. P. 26.  *See*

*also* Civil Justice Reform Act, 28 U.S.C. § 471 *et seq.*

     Broaddus' refusal to answer questions posed during the deposition is also sanctionable.  A

party may object to evidence sought to be elicited at a deposition, but it is improper for counsel to

instruct a deponent not to answer except in the limited circumstances set forth in F.R.Civ.P. 30(b)(1);

the fact that the testimony goes to arguably irrelevant matters is not one of those circumstances.

Resolution Trust Corp. v. Dabney, 73 F.3d 262,  266 (10th Cir. 1995).[6]

     As noted above, it was clear prior to the deposition that the parties differed in their definitions

of jurisdictional issues.  Broaddus therefore should have applied to the Court for a protective order,

rather than simply refusing to answer questions based on his interpretation of the meaning of the

Court's order.  "[T]he proper procedure was to apply to the court for a pre-deposition protective

order, as called for by the rules of civil procedure . . .."  Id.; Furniture World, Inc. v. D.A.V. Thrift

Stores, Inc., 168 F.R.D. 61 (D.N.M. 1996).  Because Broaddus failed to do this, the deposition was

singularly unenlightening for Simmons, and much evidence that is relevant to the jurisdictional

question remains undisclosed.

---

[6]Broaddus's counsel argues that he fell within one of the 39(b)(1) exceptions in that he instructed his client not to answer numerous questions at the deposition, not on grounds of irrelevancy but on the basis that such instructions were "necessary . . . to enforce a limitation on evidence directed by the court."  The pertinent "limitation on evidence," in Broaddus' view, was the restriction imposed by the court orders that discovery be restricted to jurisdictional issues.  However, the burden was on Broaddus to prove that each question which his attorney instructed him not to answer fell within the exception.  Dabney, at 266.  He has not done so.

3. Ehrenhaus Analysis

The Tenth Circuit in Ehrenhaus v. Reynolds, 965 F.2d 916 (10th Cir. 1992), set out five factors a court should consider in determining whether to dismiss a party's claim as a sanction for discovery abuses. The Court finds these factors helpful as guidelines in determining whether to impose sanctions other than dismissal, bearing in mind that the Ehrenhaus factors do not represent a "rigid test," the court need not analyze all of them, and some factors may take on more importance than others depending on the circumstances of a particular case. Id., at 921, 922. The five factors are: (1) the degree of actual prejudice to the party seeking discovery, (2) the amount of interference with the judicial process, (3) the culpability of the litigant, (4) whether the court warned the party that dismissal would be a likely sanction for noncompliance, and (5) the efficacy of lesser sanctions.

With regard to the first factor, it is clear that Simmons has been prejudiced in its ability to respond to Broaddus' motion to dismiss. At several points in its supplemental memorandum in response to Broaddus' motion to dismiss, Simmons stated that it could not provide evidence on certain issues due to Broaddus' refusal to respond to its discovery requests. (Doc. 66, at 5-6, 11, 16, 17). In addition, there is no question that Broaddus' failure to provide discovery "prejudiced [Simmons] by causing delay and mounting attorney's fees." Ehrenhaus, at 921.

Delay is not an inconsequential factor. Broaddus consistently waited until the last minute and beyond to respond to Simmons' written discovery requests and, when he did respond, interposed invalid objections at numerous points or refused to answer at all on unjustifiable grounds. After Simmons' counsel advised Broaddus of areas of discovery which it considered relevant to the jurisdictional issue, Broaddus' counsel waited two weeks, until a few days before Broaddus' deposition was scheduled, to review the letter and to advise Simmons' counsel of its disagreements

with their assessment and to notify them that Broaddus would not be providing certain information at the deposition.  Broaddus' actions triggered the motion for sanctions and added to the delay and expense in this case.  Simply ordering Broaddus to comply with Simmons' discovery demands at this point in the litigation, and awaiting a possible second motion to compel and a reconvening of Broaddus' deposition, would not serve the ends of justice and efficiency.

It is apparent also that Broaddus' actions have interfered with the judicial process.  Willful failure to comply with a direct court order constitutes such interference, Ehrenhaus, at 921, and Broaddus' failure to provide adequate responses has deprived the Court of the benefit of evidence which would have helped in resolving the issue of personal jurisdiction.  Regarding culpability, it is apparent that, although he technically met discovery deadlines, Broaddus invariably waited until the last minute to provide any response to Simmons' discovery requests, and the responses provided have generally been inadequate or evasive.  His actions display a pattern of disregard for the legitimate discovery rights of opposing counsel and a cavalier attitude toward orders of the Court.

The Court has not warned Broaddus that it would deem him subject to the Court's jurisdiction, but this factor does not weigh as heavily as it would in the dismissal situation typified by Ehrenhaus, since the sanction recommended here does not "defea[t] altogether a litigant's right to access to the courts."  As noted above, although the Court could simply direct Broaddus to comply with particular discovery request, enter another order compelling discovery if request and warranted, warn him that he faces more severe sanctions if he does not comply, this would not be an adequate remedy.  The motion to dismiss has already been fully briefed; indeed, Judge Parker accepted supplemental briefs on the jurisdictional issue following the close of the limited discovery period, and he has not authorized any further briefing.  When Broaddus filed his motion to dismiss for lack of

18

personal jurisdiction, he assumed the risk that the motion would be denied; the Court finds this sufficient warning that he might not avoid the Court's jurisdiction.

Finally, the Court has considered and rejected lesser sanctions than the one recommended, such as starting all over with an order compelling Broaddus to supply answers to specifically-identified discovery requests, or ordering his deposition reconvened, perhaps at a time and place where the Magistrate Judge would be available to respond to objections as they arise. These options are rejected; as noted above, they would only lead to further unnecessary delay. The Court has also considered more serious sanctions such as contempt but finds that the sanction recommended below is best fitted to the transgressions occurring in this litigation.

D.  Recommended Sanctions

1.  Broaddus Should Be Deemed Subject to the Court's Jurisdiction.

A sanction imposed for discovery abuse must be "just" and "related to the particular 'claim' which was at issue in the order to provide discovery." Ehrenhaus, at 920. "The impact of the sanction should be lodged where the fault lies." Ocelot Oil Corp., at 1465. Broaddus filed a motion to dismiss for lack of personal jurisdiction but thereafter thwarted Plaintiff's ability to respond to this motion by interposing unjustified objections to Simmons' attempts to discover information relevant to the jurisdictional issue. In so doing, he also impeded the Court's ability to resolve the motion armed with all pertinent information.

The Court finds that an appropriate sanction for Broaddus' failure to live up to his discovery obligations is to order that he not be allowed to support his claim of lack of personal jurisdiction, F.R.Civ.P. 37(b)(2)(B); that is, he is deemed to have submitted himself to the *in personam* jurisdiction of the Court. Although a court's assumption of personal jurisdiction under a long-arm

statute must comport with due process,  Trierweiler, *supra*, at 1532, the District Court's *in personam* jurisdiction over a party, unlike its subject matter jurisdiction, is a personal defense which may be asserted or waived by the party.  Williams v. Life  Sav. & Loan, 802 F.2d 1200, 1202 (10th Cir. 1986).  The Court finds that Broaddus effectively waived the defense of lack of personal jurisdiction by engaging in obstructive tactics and impeding discovery into information relevant to the issue of personal jurisdiction.

### 2. Other Relief

Simmons also asks the Court to hold Broaddus in contempt.  While not condoning Broaddus' discovery behavior, the Court finds that it does not rise to the level of contempt of court.  Simmons also asks that the Court "should designate that B/R Energy Partners Inc. was the alter ego of Broaddus for all purposes in the action."  [Doc. 73, at 23].  The Court expressly declines to make such a ruling, holding only that Broaddus should be deemed subject to the jurisdiction of this Court.

Simmons requests an award of its expenses and attorney fees in bringing this Motion for Sanctions.  The Court finds such an award appropriate under F.R.Civ.P. 37(a)(4).  If the District Judge accepts the recommended sanction, further briefing and/or a hearing will be scheduled to set the amount of such award.  Ocelot, at 1465-67; G.J.B. & Associates, at 830.

**<u>Recommended Disposition</u>**

1.  That Plaintiff's motion be granted in part and, as a sanction for Broaddus' failure to comply with court orders directing him to provide discovery on issues of personal jurisdiction, that the Court order that Broaddus is subject to the Court's jurisdiction in this case;

2.  That Plaintiff's motion be denied in part, to the extent it seeks a contempt sanction against Broaddus and to the extent it seeks a declaration that Broaddus is the alter ego of B/R Energy Partners, Inc.;

3.  That Simmons is awarded its expenses and attorneys fees in bringing this motion, in an amount to be determined following further proceedings before the Magistrate Judge.


_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge